IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE MUTUAL | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:09-cv-794-TFM |
| | ) | [wo] |
| DAPPER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties (Docs. 9-10, filed November 18, 2009) and 28 U.S.C. § 636(c). Pending before the Court is *Harleysville Mutual Insurance Company's Motion for Summary Judgment and Memorandum Brief in Support Thereof* (Doc. 24, filed February 23, 2010). The motion has been fully briefed and is now ripe for review. Upon consideration of the motion, the Court finds it is due to be **GRANTED**.

**I.   PARTIES**

Plaintiff is Harleysville Mutual Insurance Company ("Harleysville" or "Plaintiff"), an insurance company incorporated and organized under the laws of the State of Pennsylvania having its principal place of business in the State of Pennsylvania.

Defendant is Dapper LLC ("Dapper" or "Defendant"), a limited liability company incorporated and organized under the laws of the State of Alabama having its principal place

of business in the State of Alabama.

## II. JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 133 (diversity jurisdiction) and 28 U.S.C. § 2201 (Declaratory Judgment Actions). Dapper does not contest citizenship, but does contest the amount in controversy averring this court lacks subject matter jurisdiction. The Court will address subject-matter jurisdiction below. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## III. NATURE OF THE CASE

The underlying facts of this case are necessarily viewed in favor of nonmovant Dapper. Harleysville filed this action seeking a declaration that it is not contractually required to defend or indemnify its insured, Dapper. In October 2008, Fantail, Inc. ("Fantail") filed a lawsuit in Circuit Court for Elmore County, Alabama against three defendants including Dapper. *See* Doc. 1, Exhibit A. The suit, styled *Fantail, Inc. v. Kishor Desai, Shital Desai,and Dapper LLC*, is currently pending in the Circuit Court for Elmore County as Civil Action Number CV-2008-358. *Id*. The complaint seeks to recover damages for damage to property owned by Fantail allegedly caused by work performed by Dapper on land it owns directly adjacent to the Fantail property. *Id*.

Subsequent to the filings of the above referenced suits, Dapper requested Harleysville provide a defense pursuant to general liability policy number MPA 2J9198 and the umbrella

policy under BE 2J9198. Harleysville told Dapper that it would not defend the lawsuits. Harleysville admits it had a contractual obligation to insure Dapper, but argues the known-loss exclusion in the policy precludes coverage. Specifically, Harleysville avers it is not contractually obligated to provide a defense to the underlying state court action nor is it contractually obligated to indemnify Dapper should Plaintiff win in the underlying state action. *See* Doc. 24.

Harleysville submitted its motion for summary judgment on February 23, 2010. *See* Doc. 24. Dapper timely filed its response on May 3, 2010 and Harleysville filed its reply on May 10, 2010. *See* Docs. 29-30. The motion for summary judgment is fully briefed and now ripe for this Court's review.

### IV. SUMMARY JUDGMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a

genuine issue for trial." *Id*. at 249, 106 S.Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id.* A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *accord Greenberg v. Bell-South Telecomms., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and may not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43. Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255;

106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id*. at 322, 106 S.Ct. at 2552.

### V. FEDERAL JURISDICTION - AMOUNT IN CONTROVERSY

Dapper avers that the amount in controversy does not exceed $75,000.00 ergo no diversity jurisdiction. Dapper relies on Harleysville's expert report estimating the remediation costs to be between $7,500.00 and $73,055.60. *See* Doc. 29 at p. 3 and Ex. A. Dapper fails to note that while this expert report states the remediation efforts may be valued at less than $75,000.00, the potential judgment from the underlying state court lawsuit could be significantly higher especially when considering the underlying suit unequivocally demands judgment of $250,000. See Doc. 1, Ex. A. The Court cannot say with certainty that Fantail could not recover the amount sought and therefore, the amount in controversy exceeds $75,000.00. "A diversity suit should not be dismissed unless it is apparent, to a legal certainty, that the plaintiff cannot recover the requisite amount in controversy." *Deen v. Egleston*, 597 F.3d 1223, 1228 (11th Cir. 2010) (internal quotations and citations omitted);

*see also Williams v. Best Buy*, 269 F.3d 1316, 1319 (11th Cir. 2001)) (A party may show that the amount in controversy requirement is met when it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement).  As such, this Court does retain jurisdiction over this matter.

## VI. RIPENESS

### A.   Duty to Indemnify

In cases involving insurance coverage, courts treat the duty to defend and the duty to indemnify as distinct and analyze them separately.  *See Allstate Indem. Co. v. Lewis*, 985 F.Supp. 1341, 1349 (M.D. Ala. 1997).  The existence of a duty to defend may be established by the allegations in the underlying state court complaints, but the duty to indemnify cannot be determined at a preliminary stage in the proceedings.  Specifically, a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue." *Id*. (citations omitted); *accord Ladner & Co., Inc. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100, 104 (Ala. 1977); *Home Ins. Co. v. Rice*, 585 So.2d 859, 861 (Ala. 1991). That is "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Lewis*, 985 F.Supp. at 1349 (quoting *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995)).

Ripeness is now an issue as this lawsuit has been brought in federal court under the Declaratory Judgment Act.[1]  *Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F.Supp. 1510, 1515 (M.D. Ala. 1996).  Courts may decline to exercise their discretion under the Declaratory Judgment Act to decide questions about the duty to indemnify when the underlying action is pending. *See Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F.Supp.2d 1205, 1211-12 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability.").  Until the underlying suit is resolved, the duty to indemnify is an abstract, academic issue which presents "nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Am. Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960).[2]  Further, the Declaratory Judgment Act, "in its limitation

---

[1]     The Declaratory Judgment Act provides:

(a)    In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
(b)    For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act.

[2]     *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior

to 'cases of actual controversy,' manifestly has regard to the constitutional provision." *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1565 (M.D. Ala. 1996) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)).

Dapper may still prevail in the underlying suit. If Dapper wins, the indemnification issue is moot and the Court would never reach the issue. To resolve the duty to indemnify before the underlying state case concludes risks wasting judicial resources. *See Beeline Stores, Inc.*, 945 F.Supp. at 1515. As such, the Court declines to look to the duty to indemnify until after determines the duty to defend. *Cf. Universal Underwriters Ins. Cor. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993) (duty to defend may be broader than duty to indemnify); *Employers Mut. Cas. Co. v. Evans*, 76 F.Supp.2d 1257 (N.D. Ala. 1999) (a determination that there is no duty to defend may well determine the duty to indemnify issue).

**B.     Duty to Defend**

In contrast to the duty to indemnify, courts recognize a justiciable controversy exists when the insurance company denies is has an obligation to defend the insured under the policy. *See Am. Fid.*, 280 F.2d at 461. The decision whether an insurance company is obligated to defend must be made at the preliminary stage of the proceedings. *See Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1566 n. 25 (M.D. Ala. 1996) (citations omitted). "An insurance company's duty to defend its insured is determined by the language of the

---

to the close of business on September 30, 1981).

insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993).  Here, controversy exists as to whether Harleysville is obligated to provide a defense to Dapper under the insurance policy - making the duty to defend ripe for review. The Court will now look to the merits of the declaratory judgment action for the duty to defend.

### VII.  KNOWN LOSS

General rules of contract law govern an insurance contract. *Lamberts v. Coregis Ins. Co., Inc.*, 950 So.2d 1156, 1161 (Ala. 2006) (quoting *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005)).  Thus, the court must enforce the policy as written if the terms are unambiguous and whether a provision is ambiguous is a question of law. *Id*.  "A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." *Id*. at 1162.  Hence, the Court first looks to the terms of the insurance contract.

Harleysville properly identifies the pertinent sections of the insurance policy and Dapper does not dispute the language - merely the application of it. Harleysville Commercial General Liability Policy MPA 2J9198 and Harleysville Commercial Liability Umbrella Policy BE 2J9198 provide, in pertinent part, as follows:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring agreement.**

* * *

b.  This insurance applies to "bodily injury" and "property damage" only if:

   (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)  The "bodily injury" or "property damage" occurs during the policy period; and

   (3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)**  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

Both policies define certain terms as follows:

**SECTION V - DEFINITIONS**
* * *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *

17. "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

  The crux of the issue before this Court is when Dapper "knew" of the damage to Fantail's property. As noted above, under the terms of the policy, property damage is deemed to be known in three instances. The third definition is the one relevant to this case. Specifically, when the insured "[b]ecomes aware by any other means that 'bodily injury' or 'property damage' has occurred or has begun to occur." Thus, the Court first looks to the chronology of events involving the Dapper and Fantail properties, drawing all reasonable inferences in favor of Dapper.

A.   **Chronology of Events**

On August 5, 2003, Dapper purchased the 4.346 acre tract of property. The tract of land is directly adjacent to the land owned by Fantail. At this time, Dapper was not insured by Harleysville, though William Palmer ("Palmer"), Dapper's managing member, used Harleysville as his insurance company for Palmer LLC - one of his other companies. On April 12, 2006, counsel for Fantail contacted Palmer to inform him that excavation done on the Dapper property created erosion issues on the Fantail property. *See* Doc. 24, Ex. C. The conversation was confirmed in a subsequent e-mail in May 2006. *See* Doc. 24, Ex. D. Dapper began remediation of the properties in late May and June 2006 by moving dirt to the affected area. *See* Doc. 29, Ex. A. Additionally, in June 2006, Dapper received notice from the Alabama Department of Environmental Management ("ADEM") that erosion was occurring on the Dapper property which would require remediation. Throughout this time, Palmer negotiated with Fantail to resolve the matter. It was Palmer's belief that the matter had been resolved to the satisfaction of both parties.

In July 2006, Palmer spoke with his insurance agent to review his insurance coverage. At that meeting, Palmer requested Dapper be added as a named insured to his current policies - specifically the ones identified in this declaratory action. He further requested that the coverage be applied retroactively to the beginning of the current policy period. Dapper was added to the policy, effective July 26, 2006 with the retroactivity to September 20, 2005. *See* Doc. 1, Ex. B & C. On or about August 22, 2006, ADEM approved Dapper's plan of

remediation.

Sometime in early October 2006, Fantail contacted Palmer to demand a change in the proposed agreement and by November 6, 2006, the deal fell apart. *See* Doc. 29, Ex. A-6. In February 2007, Dapper subdivided the tract of land and sold the 4.139 acre parcel to Kishor Desai and Shital Patel. Dapper retained the remaining 0.238 acre tract. *See* Doc. 24, Ex. B. On October 10, 2008, Fantail filed the underlying state court complaint against Dapper and the two individuals for the erosion and property damage. *See* Doc. 1, Ex. A.

**B.     Discussion and Analysis**

Diversity jurisdiction requires this court to apply Alabama substantive law. The parties agree and the Court finds that it is presented with a novel issue apparently not addressed in any reported Alabama cases. Correct resolution of the dispute at bar requires the Court to examine basic principles of insurance contracts and apply those principles to the facts. As previously noted, the general rules of contracts govern an insurance policy and the court must enforce the policy as written if the terms are unambiguous.

Turning to the unambiguous policy terms, Dapper is deemed to have known about the property damage when it learned that it had occurred or had begun to occur. Based on the chronology of events, it is clear that Dapper knew of erosion issues between the Dapper land and the Fantail land when it was contacted by Fantail's counsel in April 2006. Dapper hired a person to fix the erosion to the Fantail property and thought the repairs were adequate to remedy the damage and prevent future damage. Dapper then sought and bought

retroactive insurance coverage for their land.  Though Dapper may have believed it had resolved the issue with its tentative agreement with Fantail, that does not negate its knowledge of the erosion event, but instead confirms it.

Dapper cites to *Essex Ins. Co. v. H&H Land Dev. Corp.*, 525 F.Supp.2d 1344 (M.D. Ga. 2007) as support for its contention that it did not have knowledge.  In *Essex*, the insured (H&H) was sued for property damage by two parties (Malone and Blair).  Essex - the insurance company - denied coverage based on the known-loss provision of the policy.  *Id*. at 1345.  The Court denied summary judgment because it determined the issue of H&H's knowledge was materially disputed.  *See id*. at 1347-48.  However, as aptly noted by Harleysville, this case is readily distinguishable.  In *Essex*, the Court determined that Essex's only evidence that H&H knew of the property damage related entirely to complaints by a neighboring landowner (Carter) and not the complaints by Malone and Blair of damage to their respective properties.  *Id*.  That evidence did not conclusively establish that H&H was aware of the alleged property damage to the Malone and Blair properties, but only the Carter property.  Such is not the case with Dapper.  It is undisputed that Dapper received notice of the Fantail property damage directly from Fantail at least two months before the Dapper property was added to the Harleysville policies.  The fact Palmer thought his remediation efforts would resolve the situation does not belie his knowledge of the damage.  Rather, this case is more like the ones presented by Harleysville.  *See Keenan Hopkins Schmidt and Stowell Contractors, Inc. v. Continental Cas. Co.*, 653 F.Supp.2d 1255 (M.D. Fla 2009)

(known-loss provision relieved insurance company from liability for amounts arising out of property damage known by the insured prior to the inception of the policy); *Quanta Indem. Co. Davis Homes, LLC*, 606 F.Supp.2d 941 (S.D. Ind. 2009) (the known claim exclusion was enforceable because the insured had knowledge of at least some of the damage prior to the inception of the policy period). While Dapper is correct in that none of these cases are binding on this court, the Court - applying its own independent reasoning and judgment - finds these cases persuasive and their reasoning sound.

The sine qua non of insurance is that an insurance company is free, absent some law or regulation to the contrary, to accept or reject the risks the company chooses to insure and to set a corresponding premium. To assess the risk and set a corresponding premium, the insurance company will examine the risk either on its own, by means of a third party, or most commonly by a certification from the potential insured that there is no known existing loss, claim, or grounds for a loss or claim which the company must pay if they undertake the risk of loss. Contractual known-loss provisions serve a valuable societal interest inasmuch as they keep the costs of insurance lower by avoiding the costs of examinations by third parties and the insurance company which would be passed on to policy holders. To strike a correct balance in the societal interests Courts must strictly construe the known-loss provisions in accordance with insurance and contract law. While the general rule is to interpret exceptions to coverage as narrowly as possible in order to provide maximum coverage for the insured, *Essex Ins. Co. v. Avondale Mills, Inc.*, 639 So.2d 1339, 1341 (Ala. 1994), the Court must also

enforce unambiguous terms. *Safeway*, 912 So.2d at 1143. Thus, while the Court should construe exclusions as narrowly as possible against Harleysville as the insurance company, the Court must also just as strictly enforce unambiguous clauses when they work against the insured - i.e. Dapper. An insurance company relies upon representations by the customer when making its decisions on whether to insure a property. Full disclosure shields legitimate policy holders from premium increases which would follow when benefits are paid to those who deliberately hid pertinent matters from the insurer. While the court credits Dapper that it had no nefarious motives in keeping the potential loss from Harleysville, the important matter is that Dapper, under the law, knew of the potential for a claim and chose not to tell Harleysville about the claim or potential claim when Harleysville explicitly put the burden to report squarely upon Dapper. The Court further credits that Dapper did not change its insurance to Harleysville because of the issues with Fantail. The reality is that while there was no nefarious intent by Palmer/Dapper, no good reason in law or equity exists to shield Dapper from the unambiguous known-loss provision of the insurance contract. To hold otherwise would lead to unnecessary litigation in other cases.

Based on all the above, the Court finds that the "known-loss" endorsement in the Policy applies. As the property damage at issue manifested prior to the Policies' inception, Harleysville is relived of any duty to defend and entitled to summary judgment in its favor.

## VIII. CONCLUSION

The Court earlier stated that it would look to the duty to indemnify once a

determination was made on the duty to defend. Now that the Court had made its determination, it is axiomatic that if there is no duty to defend then there is also no duty to indemnify. "Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (citing *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir. 1993)). As such, summary judgment is appropriate as to both the duty to defend and the duty to indemnify.

Pursuant to the foregoing Memorandum Opinion, the Court grants *Harleysville Mutual Insurance Company's Motion for Summary Judgment and Memorandum Brief in Support Thereof* (Doc. 24). An appropriate judgment will be entered.

DONE this 21st day of July, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE